

**JUL 2 1 2022**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

2:22 - CV 1 2 9 2        EFB PC

Attention Clerk

United States Court

Eastern District of California

(1)

MR. Marvin Wade          Plaintiff

          Plaintiff

                              42 U.S.C.$

V.                            1983

Sacramento Sheriff        Civil Form

Department County

jail official(s) and/or    To Be

agent(s) Et.Al.            Processed

          Defendant        in This

                              U.S. Eastern

                              District Court...

                              Judges...;

Federal Question          Plaintiff is

1331, 1332, 1333          not quite

1334                      Familiar of

                              The Pro'se

28. U.S.C. 1915 (g)       Process; so

                              Hope the court

8th Amendment             will provide

And 14th                  Legal

Amendment                 Counsel...

Constitutional            (See)

Violations                Murgia V.

2:22 - CV 1292    EFB PC  Municipal

                              Court,

                              Authorities

1   On or about October 3, 2021
2   I was made aware of aggrevalbe Issues.
3   I was placed in custudy at Sacramento
4   main jail. With no mask, no socsial
5   distancing. SMJ neglance Failure to comply
6   with minum standards was not in comparce.
7   There actions does not reflect the minum
8   requirments, by CPC. measures with regards to
9   the world wide standerds, SMJ failed there
10  duty owed to all! (A) lack of face mask
11           (B) No Social Distancing
12           (C) No Washing hands
13  Lack of Social Distance coupled with the lack
14  of due care in according to World Heath Care.
15  Total lack of compliance

16
17  I was placed in 3 west - 100 Pod for 14 days
18  "quaranitine"  Despite repeted efforts to
19  quaranitine it all coaf on the outside world.
20  Here im in direct contact with cov. 19 /Sars.
21  The fact I was placed in Sav. quantine with
22  out mask and or proper nasial test. for Cov 19.
23  Dispite my request for tests SMJ failed
24  me and other inmates. No testing for 14
25  days In main Jail of Sacraments.
26

1. Compusation argneed need similar and For Often
2. purposes, rule and Regulations are the
3. same with and infurence, contiued behavoir
4. being A Inmate, lot and not up to date
5. to forget about blood pressure checks
6. day's went by Diebeties Suffuring with
7. poor health low blood, every, time I miss
8. a blood pressure check. lowels the risk
9. of heart Failure, repeated overall
10. pressure hidden In blood flow reconqize
11. thru to the end when Heart Actually
12. Stops medical personnel medications skipped
13. The list that comes out for day was to be
14. checked off did "not happen" and over ruled
15. as already been seen. as required was
16. Fasityed. causel contact" social distuning
17. did not happen. They did not obey the
18. law, no mask. delayed testing. This
19. inadequate heath care, faled to meet the
20. Miinum standard of care, The CDC
21. Heath and safiety Standards. See
22. ex.
23. Oct 28 2021 I was transfred to R.CC
24. with 40 Inmates to " B-barracks
25. qurentine Dorm"
26.

1  For 14 days. On Oct. 17, 2021 We all
2  were tested CDVIa and test came
3  back neglive. The next day 40 more
4  Inmates arrived from Sac. Main Jail,
5  In direct vilation of all CDC gidu lines.
6  No compliances to CDC's sequations and or
7  preventitive measures with regards to the
8  CDC standards with SARS/COV-19.
9  ① No social Distances.
10  ② No Fase mask "of any Kind."
11
12  On Oct 25 2001 A second COV-19
13  test came back "POSITIVE"
14  I was told by Doctor we needed
15  to test posttive then negotive.
16  to be moved out of quartine.
17  But more inmates that where neglitue
18  where placed in the "Quartine.???
19  Now these new inmates that where
20  negitive where exposed to positive
21  inmates. No regards to the fact
22  I'm a 59 yrs. with a Major health
23  issues from Dieabies and all the
24  health matters that come with my
25  poor health.
26

1. The SMJ failed it's duty. There duty
2. to act reasonable. They failed that
3. duty owed to all inmates. That breach
4. of duty was the direct causation of
5. my getting COV-19 and the adverse
6. effects of and on the quality of life.
7. I have brain fog and joint aches
8. So Duty breach causation
9. SM Sheriffs Dept failed me
10. See Exhibit
11.
12. Sac County Jail failed to meet
13. min. standards. Plaintiffs in
14. Mays V County of Sacramento
15. (Case # 2:18-cV-02081-TLN-KJN)
16. failed to meet house protocall. &
17. inmates see Exhibit A B + C
18. Duty Breach Causation:
19. Sacramento County's duty to keep
20. me from harm. See A B C D E
21.
22. Persons undergoing routi Intake or
23. transfer quarentine shall not be
24. mixed with those who are quarantined.
25. Due to a COVID-19 exposure.
26. As required by

1    The Sac. County Failed there
2    duty to me. And all imates.
3
4    Sacramento Sheriff Failed to
5    house all people who are symptomatic
6    for Covid-19 in designed Isolation.
7    housing, which shall not be occupied
8    by people who have tested + for
9    COVID-19
10    Sac County failed to adress
11    the and adhere to standered
12    Agreement-COV19  Isolations
13    and Quarantive Protocals
14
15    See Mays V County Sacromto.
16
17    See Page 2 of 4 Ex. A B C ecs.
18    SACRAMENTO County Public HEALTH LAB
19    4600 BROADWAY, Suite 2300 SACRAMENTO C.A 95820
20    PH. 916-874-9231  Fx. 916-854-8941
21    ANTHONY H. GONZALEZ PHD.
22    COVID-19 TEST
23    : Oct 17, 2021  LAB# 215029583  Negetive Test
24    : Oct 26, 2021  LAB# 215030424  Postive Test
25
26



Exhibit (A)

**SACRAMENTO COUNTY**
**SHERIFF'S OFFICE**
**CORRECTIONAL SERVICES GRIEVANCE FORM**

| Officer Use Only | |
|---|---|
| DATE: | 11/2/2021 |
| GRIEVANCE #: | 21-4301 |
| ASSIGNED TO: | Compliance |
| ADA RELATED: | |

NAME (PRINT LAST, FIRST, MIDDLE): WADE MARVIN DUANE
DATE OF BIRTH: 2-16-62  XREF NUMBER: 886890  DATE: 10-31-21
INMATE SIGNATURE:
INMATE LOCATION: B-BAR  DATE AND TIME OF INCIDENT: 10-31-21 11:00 AM

ONLY **ONE** GRIEVANCE ISSUE PER FORM for appropriate routing. Explain your grievance *in the provided box only* (include dates, times, and names of persons involved). You only have 5 days from the incident to submit a grievance. **PREA** incidents have no time limit and can be reported ANYTIME. If this grievance is disability related check this box: ☐

On or About Oct 31, 2021 I was made aware of Aggrevible issue.
I was place in custody At Sac Maj Jail. There appride to be No Compliance to
CDC's Regulation on preventive measures Towards Sars/cov-19 IE No
Social Distance, No proper santation material. I was subsequantine placed
on quaranitine on 3 West -100 pod. Was placed there for 14 Days without
proper for Nasial test for cov-19 Despite my Request to be tested Oct 5 I
was tranfered to 6 West 206. Then on Oct 8 was tranfered Along with
40 inmates to RCCC without any percautionary material to prevent
the spread of Sars/cov-19: No Social Distances Ect. Upon Arrive to
RCCC we were all placed in B-Barracks. Then the Next Day 40 New inmate
was placed in our Dorm Bring the Capaticty to 80 inmates, which was Dorms
full capacity in our living guarters No more than 2½ feet apart This is a
In direct violation of the CDC's Mandate. Apporent two Days After
the Second Phyase Arrived cov-19 Started to perville various inmates
we all were tested on Oct 17 for cov-19 I recived my test back on
20 of Oct Showing Negitive Resolts. Then retesed Oct 25 and
Came back Positive. Symptoms joints Hurt Headaches very weak
very cold chills. I find that County heath & Adminstive Officacs have been
Negligants to Compling with CDC's heath & Safety Standred

---

**This Section for Staff Use Only**

RECEIVING INDIVIDUAL (PRINT NAME): P. Cope
BADGE NO.: 1466
DATE / TIME: 10/31/21 2145

Check one: ☐ **RESOLVED** at the Staff Level   ☐ **FORWARD** to Supervisor level

**Response:**   See attached

RESPONDER (PRINT NAME): Miller
BADGE NO.: #774
DATE: 11/2/2021
SUPERVISOR'S SIGNATURE:   BADGE NO.:   DATE:

Supervisor check one: Corrective Action Taken ☐   Denied ☐   Not Grievable ☐   Resolved ☐
WATCH COMMANDER: N/A ☐   BADGE NO.:   DATE:   ASSISTANT COMMANDER:   BADGE NO.:   DATE:

7400-012 (REV 9/2020)

*Exhibit (B)*

*JKF 117*



## SACRAMENTO COUNTY SHERIFF'S OFFICE
### *CORRECTIONAL SERVICES GRIEVANCE REPLY FORM*

| | |
|---|---|
| | **Grievance#:** 21- 4301 |

| PRIMARY INMATE NAME (PRINT LAST, FIRST, MIDDLE) | XREF NUMBER | LOCATION | DATE |
|---|---|---|---|
| **Wade, Marvin** | **886890** | ~~MS B032~~ | **11/2/2021** |

### STATEMENT OF PROBLEM:

Inmate states inter-facility movement caused COVID-19 infection, not allowed to social distance.

### FINDINGS:

The movement of inmates is only done after clearance and approval of Adult Correctional Health. ACH will only clear an inmate from quarantine with the approval of supervisory medical staff. Any complaints regarding the length of an inmates quarantine time should be directed to medical via medical kites and grievances.

The unfortunate nature of a detention facility prevents the implementation of some of the practices that are more easily exercised by non-incarcerated people. The medical community has come to recognize that many of these safety protocols cannot be implemented in the jails without substantially altering the nature of a jail and, in turn, the CDC has developed guidelines specific to jails and other detention facilities. Adult Correctional Health and The Sacramento County Sheriff's Department work hard to follow these protocols set forth by the CDC and slow the spread of COVID-19.

Per Adult Correctional Health and CDC after recovery from the virus you may test positive for up to 90 days. Studies have also found that most patients who recover have neutralizing antibodies — the type of antibody that confers immunity and protects people from getting sick again.

Additionally, it should be noted that a patient can and most likely will, remain symptomatic even after they have recovered from COVID-19. This means that after your quarantine period ends and you are recovered, you may still experience some of the symptoms commonly associated with COVID-19 long after you have been infected, but you are no longer contagious to others. Please advise officers or medical personnel of these symptoms so that they may treat them accordingly. Although you are no longer contagious, **do not take this to mean that you may disregard the COVID-19 safety protocols in place.**

- COMPLIANCE UNIT

| Check one: Corrective Action Taken ☐ | Denied ☐ | Not Grievable ☐ | Resolved ☐ |
|---|---|---|---|

| *If RESOLVED at the lowest level* |||||
|---|---|---|---|---|
| PRINT RESPONDER'S NAME | BADGE # | DATE | RESPONDER'S SIGNATURE | |
| Miller | #774 | 11/2/2021 | | |

| *If RESOLVED at the Supervisor's level* |||||
|---|---|---|---|---|
| PRINT SUPERVISOR'S NAME | BADGE # | DATE | SUPERVISOR'S SIGNATURE: (if same as responder, skip) | |
| D. Smith | 199 | 11/2/21 | Sgt Smith | |

| WATCH COMMANDER, N/A ☑ | BADGE # | DATE | ASSISTANT COMMANDER | BADGE # | DATE |
|---|---|---|---|---|---|
| | | | LT. Choo Kato | 30 | 11/2/21 |

7400-013A (7421-085 Rev 2/2020)

SACRAMENTO
C O U N T Y

**Adult Correctional Health**

**RCCC Grievance**

21-4301

**Grievance Form**          Grievance No. _____

Routed to: _____

**Grievance Type: (Please check one)**

☑ **MEDICAL**    ☐ **MENTAL HEALTH**    ☐ **DENTAL**    ☐ **DISABILITY**

Name **MARVIN WADE**    XREF No. **886890**    Today's Date **11-2-21**

**IF YOU ARE HAVING A MEDICAL OR PSYCHIATRIC EMERGENCY NOTIFY AN OFFICER**

Date of Incident: **Oct 8**

Explain in detail your complaint below:

On or About Oct 8 I was tranfed to RCCC with 40 Inmates to B-Barracks qurentine Dorm for 14 Days On Oct 17 2021 we all were tested Covid-19 And test came back Negitive. The Next Day, 40 more Inmates Arrived from Sac Main Jail. No compliences To CDC's Reguations On Prefvetive Measures. Towards SARS/Cov-19 I.E. No Social Distances On Octber 25 2021 A Second Cov-19 Test was taken And on Oct 27 2021 test came back Postive And was told by Doctor that we Needed to test postive to get out of quartine Dorm). I Am 59 yrs old with Dieabies Not Very good health Now My joints Pain Head Achs, Cant Sleep Afaird, chills cold and still in quartine. I find that County Heath & Adminision Officails have been Negiagant In compling with CDC's Heath & Safsty Standarns. That Prevents the Spread of SARS/Covz-19

*After completing this form, seal it and place it in a lockbox or give it to any medical staff.*

ACH 04/2021 | COUNTY OF SACRAMENTO

MARVIN Wade #886890 #bd #K9    TEL 713-731-1711
12500 Bruceville Rd.                                        1-24-22
Elk Grove, Calif 95757

Compusation Argreed needed similar And For often
purposes, rules And Regulations Are the same with
Insurance, contiued behavoir being A Inmate, lost And
Not up to date to Forget About blood pressure checks
days went by. Diebeties Suffuring with poor Health
Low blood, every time I miss A blood pressure check
It lowers risk of Heart Failure, repeated, overall
pressure hidden IN blood Flow reconizge thru to
the end when Heart Actually stops. Medical personnel
Medications skipped of Monitoring the list That
comes out For the day to be checked off And
over-ruled As Already been seen..., Causual
distance to where nothing Is to be done, but ask
staff, Nurse office request taken over riding
staffs consent calls to nurse's office,
Delayed Testing poor Medical, Low Quality,
positive people law-suit regarding no subject
not be comusated by wrong Ads, Inhumane And
unconstitutional jail conditions IN Main jail And
Rio Cosumnes correctional Center Inadequate
Health Care, privary And disability laws Violation Oct-8
I was transfered Along with 40 Inmates to Rccc
with out Any precautions, I was not Infected I
Took A Test And It was Negative. A week later
40 more Inmates, please advise me and please

*Exhibit C*

*Mays v. Sacramento County* – **Case Update (March 2021)**
**Page 1 of 4**



PRISON LAW OFFICE

General Delivery, San Quentin, CA 94964
Telephone (510) 280-2621 • Fax (510) 280-2704
www.prisonlaw.com

*Director:*
Donald Specter

*Managing Attorney:*
Sara Norman

*Staff Attorneys:*
Rana Anabtawi
Laura Bixby
Patrick Booth
Steven Fama
Alison Hardy
Sophie Hart
Jacob Hutt
Rita Lomio
Margot Mendelson

## MAYS V. SACRAMENTO COUNTY

### CASE UPDATE
### (MARCH 2021)

*Mays v. Sacramento County*
U.S. District Court for the Eastern District of California
Case No. 2:18-cv-02081

Thank you for your recent letter about conditions in the Sacramento County jails. We appreciate that you took the time to describe the problems you are experiencing in the jails. We are sorry that we have to send you this form letter response. We are receiving a lot of mail from people in Sacramento County jails, and this letter is the most efficient way for us to respond while we focus on improving conditions. We are also sorry that we cannot represent you in an individual lawsuit or help you with your criminal case.

### Background on the *Mays v. Sacramento County* Case

In 2015, Disability Rights California (DRC) issued a public report, finding many serious problems with the conditions in the jails. In January 2016, we and DRC agreed to negotiate with the County of Sacramento as an alternative to immediately bringing a lawsuit. As a part of those negotiations, the County hired five nationally recognized experts to assess the conditions in the jails. The experts wrote detailed reports, including on issues of solitary confinement, classification, suicide prevention, disability accommodations, and mental health care in the jails.

In July 2018, the Sacramento County Board of Supervisors informed us that the County was not prepared to agree to a settlement. As a result, on July 31, 2018, we filed a class action lawsuit, *Mays v. Sacramento County*, in federal court about conditions in the Sacramento County jails. The lawsuit is about deficiencies with mental health care, suicide prevention, medical care, disability accommodations, and the use of solitary confinement.

*You do not need to join or be added to the lawsuit; all people incarcerated in the jails are included in the lawsuit.* If you would like a copy of the Complaint, please write to us to request one.

In June 2019, after extensive negotiations, the parties reached a settlement to address the illegal and unconstitutional conditions and policies we set forth in our complaint. The terms of the settlement agreement are described in a document called the Consent Decree. The Consent Decree includes a document called the "Remedial Plan." The Remedial Plan explains how the County has

MEMORANDUM OF AGREEMENT – COVID-19 Isolation and Quarantine Protocols

*Mays v. County of Sacramento* (Case No. 2:18-cv-02081-TLN-KJN)

Page **2** of **4**

2. Sacramento Sheriff's Office will house all people who are symptomatic for COVID-19 in designated *suspected* COVID-case isolation housing, which shall not be occupied by people who have tested positive for COVID-19.

3. These practices shall be followed irrespective of space and population constraints.

4. The Sacramento Sheriff's Office will adhere to the following quarantine practices:
   a. All new intakes shall be quarantined and monitored for symptoms at least daily, including temperature checks, for 14 days. All new intakes shall be tested within 48 hours of arrival and again on day 12.
   b. All detainees who are transferred between jail facilities shall be quarantined upon arrival at the receiving institution for 10 days, with testing on day 3 and day 10 before release from quarantine.
   c. All detainees who are asymptomatic close contacts of a known COVID-19 case shall be quarantined and monitored for symptoms at least daily, including temperature checks, for 14 days.
   d. All individuals in Close Contact quarantine for COVID-19 shall be tested on day 5 and on day 12. Testing shall continue every 7 days until two consecutive negative tests.
   e. Close contacts should be quarantined individually whenever possible.
   f. Cohorting multiple close contacts should only be practiced if there are no other available options for individual quarantine.
   g. If cohorting close contacts, the Sheriff shall follow the guidance from CDC on social distancing strategies.
   h. When placed in Close Contact quarantine, the following people shall be quarantined individually or in cells housing no more than two people with the same common exposure: people who are 65 or older, people who are immunosuppressed due to a medical condition or medical therapy, and others at substantially increased risk for severe illness from COVID-19 as designated by the Medical Director.
   i. If an individual who is part of a Close Contact quarantine becomes symptomatic, s/he shall be placed under COVID Case isolation immediately.
      i. If s/he tests positive for COVID-19, or refuses to be tested, the 14-day quarantine clock for the remainder of the cohort shall be reset to 0.
      ii. If s/he tests negative for COVID-19, they may return to the cohort for the remainder of the quarantine period
   j. No individuals shall be added to an existing Close Contact quarantine cohort after the 14-day quarantine clock has started.

*Mays v. Sacramento County* – Case Update (March 2021)
Page 3 of 4

## January 2021: First Monitoring Report of the Medical Care Remedial Plan

The court expert on medical care acknowledged the impact of the COVID-19 pandemic on the County's implementation of the Remedial Plan and also identified systemic problems with medical care at the jail. These problems include: inadequate health care policies and nursing procedures; lack of adequate health care staffing; problems with the electronic health record system; lack of communication and collaboration between medical and mental health staff; problems with administration and continuity of medications; untimely responses to health requests; delays in transporting patients to the hospital; poor nursing and quality of medical care; and problems with medical intake process at booking. The expert wrote that the findings in the report were "deeply concerning," but also correctable.

## January 2021: First Monitoring Report of the Mental Health Care Remedial Plan

The court expert on mental health care reported that the County has made some progress related to mental health treatment since the Remedial Plan went into effect, but the efforts were "thwarted by the global pandemic and slowed by severe resource and physical plant limitations." The expert found that the County was non-compliant with several Remedial Plan provisions regarding mental health staffing, provision of mental health care, and confidentiality. The expert recommended that the County focus on ensuring sufficient mental health staffing, reducing uses of force against people with mental health needs, delivering adequate levels of mental health care, and providing adequate treatment space.

## January 2021: First Monitoring Report of Suicide Prevention Remedial Plan

Of the Remedial Plan's 63 suicide prevention provisions, the County was not compliant with any provision. The court expert on suicide prevention practices found the County to be partially compliant with 53 provisions and non-compliant with 10 provisions. The expert concluded that the County should focus on developing suicide prevention policies, taking steps to ensure confidentiality during the intake process, and making sure that people have property and privileges even when in mental health crisis unless there are specific safety concerns.

## February 2021: First Monitoring Report on Restrictive Housing, Discipline, and Classification Practices in the Sacramento County Jails

This report, completed by Plaintiffs' class counsel, acknowledged that the SSO had reduced the number of people living in restrictive housing (also known as segregation) over the past several years, but concluded that the conditions in restrictive housing units at the jail are still harsh and inhumane. This report found that the SSO overuses restrictive housing units to house people who have serious mental health needs. It also said that the SSO is not following the Remedial Plan requirements about informing people of the reason for placement in restrictive housing and the criteria for getting out of restrictive housing. Much work remains for the County to comply with the Remedial Plan requirements in this area.

Donald Specter (SBN 83925)
  dspecter@prisonlaw.com
Margot Mendelson (SBN 268583)
  mmendelson@prisonlaw.com
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Fax: (510) 280-2704

Aaron J. Fischer (SBN 247391)
  ajf@aaronfischerlaw.com
LAW OFFICE of AARON J. FISCHER
2001 Addison Street, Ste. 300
Berkeley, CA 94704
Telephone: (510) 806-7366
Fax: (510) 694-6314

Jennifer Stark (SBN 267062)
  jennifer.stark@disabilityrightsca.org
DISABILITY RIGHTS CALIFORNIA
2111 J Street, #406
Sacramento, CA  95816
Telephone: (510) 267-1200
Fax: (510) 267-1201

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

| | |
|---|---|
| LORENZO MAYS, RICKY RICHARDSON, JENNIFER BOTHUN, ARMANI LEE, and LEERTESE BEIRGE on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF SACRAMENTO, <br><br> Defendant. | Case No. 2:18-cv-02081 TLN KJN <br><br> **CLASS ACTION** <br><br> **JOINT STATUS REPORT ON RESOLUTION OF DISPUTE RE: COVID-19 RESPONSE** <br><br> **Judge: Hon. Kendall J. Newman** <br><br> Complaint Filed: July 31, 2018 |

1    The parties now have reached an agreement resolving this dispute. The

2    Memorandum of Agreement is attached to this Joint Status Report.

3    Respectfully submitted,

4

5    Dated: January 11, 2022          */s/ Margot Mendelson*
                                       Margot Mendelson (SBN 268583)
6                                      PRISON LAW OFFICE
                                       Attorney for Plaintiffs
7

8    Dated: January 11, 2022          */s/ Aaron J. Fischer*
                                       Aaron J. Fischer (SBN 247391)
9                                      LAW OFFICE OF AARON J. FISCHER
                                       Attorney for Plaintiffs
10

11   Dated: January 11, 2022          */s/ Rick Heyer*
                                       Rick Heyer (SBN 216150)
12                                     SACRAMENTO COUNTY COUNSEL
                                       Attorney for Defendant

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

JOINT STATUS REPORT

MEMORANDUM OF AGREEMENT — COVID-19 Isolation and Quarantine Protocols

*Mays v. County of Sacramento* (Case No. 2:18-cv-02081-TLN-KJN)

Page **3** of 4

(k.) Persons undergoing routine intake or transfer quarantine shall not be mixed with those who are quarantined due to a COVID-19 exposure.

(5.) If at any point, there is not sufficient space or staff to comply with these protocols, the Sacramento Sheriff's Office shall consider exercising its authority to release people in its custody pursuant to California Government Code Section 8658.

6. Within five (5) business days of execution of this Agreement, Adult Correctional Health and Sacramento Sheriff's Office will revise its COVID-19 Staff Guidance and other guidance documents to reflect the requirements set forth above.

7. Within five (5) business days, SSO will a clear directive, via written policy and Inter-Departmental Correspondence, to all Jail staff regarding the requirements set forth above.

8. The Sacramento Sheriff's Office, in coordination with Adult Correctional Health, shall continue to review and adapt its COVID-19 guidance to CDC protocols, as scientific information and recommended public health practices for correctional facilities evolve. Should the County seek to modify its policies based on changing public health guidance, the County agrees to notify Plaintiffs' class counsel and the court experts on medical care prior to any modification to the policy. If Plaintiffs' class counsel objects to the change in policy in whole or in part, the parties will meet and confer – with the assistance of Magistrate Judge Cousins, if available – before any disputed component of the policy change is implemented.

9. The provisions of this MOU will remain in effect until expressly superseded or rescinded. Either party may request to revisit the provisions on a quarterly basis.

10. The terms of this Agreement are subject to the monitoring and enforcement provisions set forth in the *Mays* Consent Decree.

This Agreement shall be deemed fully executed and effective when all Parties have executed it by signature.

Dated: January 10, 2022 _____

Margot Mendelson
Attorney for Plaintiffs

1/10/22, 11:21 AM                    The Prison Law Office Mail - Demand for immediate change to current COVID-19 practices



Margot Mendelson <mmendelson@prisonlaw.com>

## Demand for immediate change to current COVID-19 practices

**Margot Mendelson** <mmendelson@prisonlaw.com>                                    Thu, Nov 11, 2021 at 3:32 PM
To: "Heyer. Rick" <heyerr@saccounty.net>
Cc: "Damiano. Sandy" <DamianoSa@saccounty.net>, "Petersen. Matthew (SacSheriff)" <mpetersen@sacsheriff.com>, Aaron
Fischer <ajf@aaronfischerlaw.com>, Madeleine LaMarre <mlamarre55@gmail.com>, Karen Saylor
<ksaylor@coastalmainedirectcare.com>, Mary Perrien <mperrien@aol.com>, "Lindsay M. Hayes" <lhayesta@msn.com>, Patrick
Booth <patrick@prisonlaw.com>, Skye Lovett <skye@prisonlaw.com>

Rick,

We write regarding the COVID-19 data we received yesterday. We are profoundly alarmed to learn that, due to lack of bed
space, RCCC is currently housing people who have tested positive for COVID-19 in the same dorm as those who have not.
This practice poses an intolerable risk of illness and death to the people living in those dorms. We demand that the Sacramento
Sheriff Department immediately cease housing people known to be positive with people not known to be positive. All people
who have tested positive must immediately and at all times in the future be housed either alone in a cell, or in a cell or dorm
only with others who have tested positive.

Please certify by Monday that no person known to be positive for COVID-19 is sharing air space in the Sacramento County Jail
with people who are not known to be positive for COVID-19. If the County is unable to make that certification, we will issue a
public letter invoking the dispute resolution process on an expedited basis.

Please also provide a list of every person living in the dorms at RCCC that are currently cohousing positive and negative cases,
along with the results of each person's most recent COVID test. In addition, please provide a list of every person who
previously has been housed in a dorm with at least one known COVID-19 case at a time when that person was not known to be
positive for COVID-19.

Thank you,
Margot



Margot Mendelson <mmendelson@prisonlaw.com>

---

## Mays v. Sacramento | Request for meeting on time-sensitive dispute

---

**Margot Mendelson** <mmendelson@prisonlaw.com>          Tue, Nov 16, 2021 at 4:34 PM
To: Nathanael Cousins <Nat_Cousins@cand.uscourts.gov>
Cc: "Heyer. Rick" <heyerr@saccounty.net>, Aaron Fischer <ajf@aaronfischerlaw.com>, Patrick Booth
<patrick@prisonlaw.com>, Sara Norman <snorman@prisonlaw.com>

Dear Judge Cousins,

We write to request a session with you regarding an urgent matter of dispute that has arisen between the parties in this action. We respectfully request to meet with you at your soonest availability due to the serious and time-sensitive nature of the issue.

County counsel has confirmed that the Sacramento Sheriff's Office has a current policy of co-housing in large dorms people who have tested positive for COVID-19 and those who have not. In other words, when a person tests positive for COVID-19, they are not removed from their dorm housing, but rather remain commingled in the dorm with other people, including sharing air space for sleeping, eating, and recreation. Plaintiffs maintain that this practice poses an intolerable risk of serious illness or death to those who have not tested positive for COVID-19. Defendants claim they are unable to change this practice due to population pressures.

At present, dozens of people in the Sacramento County Jails who have not tested positive for COVID-19 are living in dorms with people who have tested positive. This is a serious and imminent risk. Pursuant to the Consent Decree in this matter, the parties respectfully request a meeting with you as soon as possible to discuss these important issues.

Thank you for your assistance.

Margot

--
**Margot Mendelson**
Staff Attorney
Prison Law Office
1917 5th Street
Berkeley, CA 94710
(510) 280-2621
mmendelson@prisonlaw.com
Pronouns: she/her

# SACRAMENTO COUNTY PUBLIC HEALTH LAB

4600 BROADWAY, SUITE 2300, SACRAMENTO, CA 95820-1527
PH: 916-874-9231        FX: 916-854-8941
DIRECTOR: ANTHONY H. GONZALEZ Ph.D, HCLD(ABB)
CLIA ID: 05D0644185

SUBMITTER: 008

## CLINICAL LABORATORY REPORT

| | |
|---|---|
| RIO COSUMNES CORRECTIONAL CENTER<br>12500 Bruceville Rd<br>ELK GROVE, CA 95757<br><br>Phone: 916-874-1987<br>Requested By: Babu, Veer<br>Submitter Specimen # | Patient: **Wade, Marvin**<br>12500 Bruceville Rd.<br>Elk Grove, CA 95757<br><br>DOB: 02/16/1962        Age: 59<br>Gender: MALE<br>Med. Rec: 886890 |

| | |
|---|---|
| **Lab #: 21S030424**<br>Reason for Testing:<br><br>Source:        Nasopharyngeal | Collected:    10/26/2021<br>Received:    10/26/2021    10:52:00 |

**Comments:**        MS B 032
Name on tube: Wade Marvin Duane

TEST REQUESTED                              RESULTS
**SARS-CoV-2 PCR**                          **DETECTED \***

A positive test indicates the presence of 2019-
nCoV (SARS-CoV-2) RNA, the virus that causes
coronavirus disease 2019 (COVID-19).

The 2019 Novel Coronavirus (SARS-CoV-2) molecular
assay is for use only under Food and Drug
Administration's Emergency Use Authorization.
Please refer to the following link regarding
interpretation of results:
https://www.fda.gov/medical-devices/emergency-
situations-medical-devices/emergency-use-
authorizations#coronavirus2019

Tested: 10/26/2021        Reported: 10/26/2021

**NOTE Flag(s):**   \*    = Abnormal

\*\*\* Final Report \*\*\*

Sacramento County Public Health Laboratory may forward copies of laboratory reports to regulatory agencies if results
are found to meet regulatory requirements. This note serves as your record of disclosure for HIPAA compliance.



**PRISON LAW OFFICE**

General Delivery, San Quentin, CA 94964
Telephone (510) 280-2621 • Fax (510) 280-2704
www.prisonlaw.com

*Director:*
Donald Specter

*Managing Attorney:*
Sara Norman

*Staff Attorneys:*
Rana Anabtawi
Laura Bixby
Patrick Booth
Steven Fama
Alison Hardy
Sophie Hart
Jacob Hutt
Rita Lomio
Margot Mendelson

# LEGAL MAIL - CONFIDENTIAL

January 20, 2022

Marvin Wade, X-886890
RCCC
12500 Bruceville Road
Elk Grove, CA 95757

Dear Mr. Wade:

We write in response to your November 5, 2021 letter, which we received on November 10. Thank you for writing to us. I am sincerely sorry for the long delay in our reply.

You wrote that you tested positive for COVID-19 and were suffering serious symptoms. We are so sorry to read this. How are you doing now? Please write to us to update us.

If you are still having symptoms, we encourage you to file a medical kite, then a grievance if that doesn't work, to ask for the care you need. If you send us copies of any paperwork you file and responses you receive, we will review them to see if we can help. A postage pre-paid envelope is enclosed.

Please also write to us right away if you experience any further problems with COVID-19 precautions taken at the jail. On January 11, 2022, Sacramento County agreed to certain measures regarding COVID-19 to protect people in the jails. That agreement was filed with the Court in the *Mays v. County of Sacramento* lawsuit, which is a class action on behalf of people in the jails that covers medical care and several other issues. A copy of the agreement is enclosed.

We hope this will be useful, Mr. Wade, and I apologize again for the delay. I hope you had a safe new year. Please take good care.

Sincerely,

Skye Lovett
Litigation Assistant under Margot Mendelson

Enclosures:   Doc. 150 & 150-1 (Jan. 11, 2022); SASE; Sac CJ Case Update; Suing Local - Sac

**Board of Directors**
Harlan Grossman, President and Treasurer • Christiane Hipps, Vice President
Vanita Gaonkar • Nick Gregoratos • Michael Marcum • Jean Lu
Claire McDonnel • Ruth Morgan • Seth Morris • Adrienne Yandell

May file in person, or mail form to:  Clerk, Board of Supervisors, 700 H Street, Rm. 2450, Sacramento, CA 95814
**Please keep one (1) copy for your records - Print/Type Only**

# CLAIM AGAINST THE COUNTY OF SACRAMENTO

| |
|---|
| CLAIM NUMBER (Dept. Use ONLY) |

**1. Claimant's Name** Marvin J Wade V    **2. Date of Birth** 2·16·62
Last          First          M.I.

**3. Claimant's Address**
Wade Marvin 3724 K. Dare. Houston Tx. 77047
Street (or P.O. Box)          City          State          Zip Code

**4. Address Where Correspondence Should Be Sent (if different from above)**
Name:

Street (or P.O. Box)          City          State          Zip Code

**5. Phone Number** 713 731 1711
Home          Work          Other

**6.  E-mail address**

**7.  Amount of Claim**  $ 50,000,000.00

**8. Itemized List of Claimed Expenses / Damages (should equal Line 7)**

| ITEM | DOLLAR AMOUNT |
|---|---|
| | $ |
| | $ |
| | $ |
| (Please attach any estimates* and/or receipts to your claim) **TOTAL CLAIM** | $ |

*1 estimate if repairs are less than $1,000
*2 estimates if repairs are more than $1,000

Board of Supervisors Stamp

Do Not Write In This Space

**9. Date of Accident / Incident / Loss:**

**10. Location of Accident / Incident / Loss:**

**11. Provide your description of how the Accident / Incident / Loss Occurred:**

**12. Describe Damage / Injury / Losses being claimed (including prospective Damage / Injury / Losses to the extent it is known at the time of claim filing)**

**13. Name(s) of Public Employee(s) Involved:**

**14.   Are you receiving Medicare, or will you be receiving Medicare in the next 3 years?**   ☐ YES  or  NO ☐

Section 72 of the Penal Code states:  "Every person who, with intent to defraud, presents for allowance or for payment to any state board or officer, or to any county, city, or district board or officer, authorized to allow or pay the same if genuine, any false or fraudulent claim, bill, account, voucher, or writing, is punishable either by imprisonment in the county jail for a period of not more than one year, by a fine of not exceeding one thousand dollars ($1,000), or by both such imprisonment and fine, or by imprisonment in the state prison, or by a fine not exceeding ten thousand dollars ($10,000), or by both such imprisonment and fine."

**15.   Signature of Claimant/Representative:**          DATE

Revised: 4/18          **You must present your claim within the time prescribed by Govt. Code Section 911.2.**

Print Form

1  Your Name  Wade Marvin

2  Address  3724 Kildare Drive

3  City, State, Zip Code  Houston Texas, 77047

4  Telephone Number

5  713.731.1711

6  IN THE UNITED STATES DISTRICT COURT

7  EASTERN DISTRICT OF CALIFORNIA

8  Your Name,  Wade Marvin

9       Plaintiff,

10  vs.  County of Sac, No.

11  Defendant(s),

12       Defendant(s).  **PROOF OF SERVICE**

13  _____ /

14      I, the undersigned, hereby certify that I am over the age of eighteen years and

15  on _____, 20_____, I served a copy of

16  _____,

17  by placing a copy in a postage paid envelope addressed to the person hereinafter listed

18  by depositing said envelope in the United States Mail:

19

20  **(List All Defendants and Addresses Served)**

21

22  I declare under penalty of perjury that the foregoing is true and correct.

23

24                                      _____

25                                       (Signed)

26

**Attachment 6**

# Proof of Service

4  On 7/17/2022 I  MARVIN WADE

5  Filed THE following LEGAL

7  DocumENT: 42 U.S.C 81983

8  Civil LawsuiT FoRm.

13  TO: THE following CouRT-

15  United STATE CourTs

16  OFFice of THE CLERK,

17  United STATEs DisTricT CourT

18  EASTERn DisTricT of CALIForniA

19  501 1ST., STE 400

20  SACRAMENTo; CA 95814-2322

23  I decLARE under penalTI of

24  PERJURI THAT THE FOREGoing is

25  TRUE And CoRREcT To THE BEST

26  of my KnowLEdge And AbiLiTI

27  SignATURE: